# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-1481

_____

| | |
|---|---|
| United States of America, | * |
| | * |
| Plaintiff – Appellee, | * |
| | * |
| v. | * |
| | * |
| Donroy Ghost Bear, | * |
| | * |
| Defendant – Appellant. | * |

_____

No. 09-1642

_____

Appeals from the United States
District Court for the
District of South Dakota.

[UNPUBLISHED]

| | |
|---|---|
| United States of America, | * |
| | * |
| Plaintiff – Appellee, | * |
| | * |
| v. | * |
| | * |
| Shane Tyon, | * |
| | * |
| Defendant – Appellant. | * |

_____

Submitted: December 15, 2009
Filed:  July 21, 2010

_____

Before BYE, BEAM and COLLOTON, Circuit Judges.
_____

BYE, Circuit Judge.

Donroy Ghost Bear and Shane Tyon pleaded guilty pursuant to plea agreements to one count of conspiracy to distribute cocaine, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(a). On appeal, Ghost Bear and Tyon argue the Fort Laramie Treaty of 1868 divested the district court of jurisdiction to hear their case. In addition, Ghost Bear challenges the district court's[1] determination that he was not entitled to a two-level reduction for acceptance of responsibility under the Sentencing Guidelines. We affirm.

I

The plea agreements reveal the following facts. In 2001, Ghost Bear became involved with a group in South Dakota transporting and selling cocaine. Tyon later became a member of the same group. During the conspiracy, Ghost Bear and Tyon imported more than five kilograms of cocaine into South Dakota.

Ghost Bear and Tyon are members of the Oglala Lakota Sioux Tribe and resided on the Pine Ridge Indian Reservation located near Rapid City, South Dakota. In January 2007, federal agents executed a warrant to arrest Ghost Bear; he was arrested on the reservation. The record does not indicate where Tyon was arrested.

After a grand jury indicted both men on various drug charges, Ghost Bear and Tyon moved for dismissal of all charges on the grounds that the Treaty of Fort Laramie of 1868 barred prosecution. The district court denied the motion. Ghost

_____

[1]The Honorable Richard H. Battey, United States District Judge for the District of South Dakota.

-2-

Bear and Tyon subsequently pleaded guilty pursuant to written plea agreements to one count each of conspiracy to distribute a controlled substance, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(a). Ghost Bear and Tyon's plea agreements contained provisions waiving their right to appeal. Both appeal waivers, however, included exceptions for challenges to the district court's jurisdiction as well as the "right to appeal the sentence for a determination of 'reasonableness' should the Court impose a sentence above the advisory guideline range established by the Court for the offense."

At sentencing, Ghost Bear sought a two-level reduction of his offense level for acceptance of responsibility, see U.S.S.G. § 3E1.1(a). The district court declined to apply the two-level reduction. Ultimately, the district court imposed a sentence of 151 months on Ghost Bear and 120 months on Tyon, both sentences within the Guidelines range.

Ghost Bear and Tyon timely appeal.

II

We review the district court's subject matter jurisdiction de novo. See Keene Corp. v. Cass, 908 F.2d 293, 296 (8th Cir. 1990).

As a starting point, 18 U.S.C. § 3231 provides that "[t]he district courts of the United States shall have original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States."

Ghost Bear and Tyon cite the so-called "Bad Men" provision of the Fort Laramie Treaty of 1868, which states:

> If bad men among the Indians shall commit a wrong or depredation upon the persons or property of any one, white, black, or Indian, subject to the authority of the United States, and at peace therewith, the Indians herein named solemnly agree that they will, upon proof made to their agent and notice by him, deliver up the wrong-doer to the United States, to be tried and punished according to its laws.

Treaty with the Sioux, Apr. 29, 1868, U.S.-Sioux, art. I, 15 Stat. 635.

According to Ghost Bear and Tyon's argument, the "Bad Men" provision requires the United States to give notice before seizing persons in Indian country. As a corollary, Ghost Bear and Tyon contend that failure to give notice as contemplated by the treaty is a jurisdictional defect barring prosecution in federal court.

We rejected the same arguments in United States v. Drapeau, 414 F.3d 869, 878 (8th Cir. 2005). In Drapeau, we held that the plain language of the treaty:

> does not create the sort of 'notice' requirement that [the appellant] envisions. The treaty does not say that the United States must give notice to an Indian tribe before the government may arrest and prosecute a tribal member who has violated the federal drug trafficking laws. Rather, the treaty imposes an obligation on the tribe to 'deliver up the wrong-doer to the United States,' upon proof and notice to the tribe.

Id. In addition, the Drapeau court held that to the extent the treaty could be construed to impose a notice and request obligation on the United States, Congress' grant of citizenship to the Indians, 8 U.S.C. § 1401(a)(2) (now § 1401(b), see Pub. L. No. 95-432, § 3, 92 Stat. 1046 (1978)), "makes them 'subject to all restrictions to which any other American citizen is subject, in any state,' and that the 'legislative history and the language of the statute itself are sufficient expression of a clear Congressional intent to abrogate or modify any treaty provisions to the contrary.'" Id. (citation omitted).

Drapeau controls this case. We hold the district court did not err when it concluded subject matter jurisdiction existed in this case.

III

Next, Ghost Bear challenges the district court's determination that he was not entitled at sentencing to a two-level offense level reduction for acceptance of responsibility, see U.S.S.G. § 3E1.1(a). The government contends Ghost Bear waived his right to appeal this issue. We agree.

An appeal waiver is enforceable where the appeal falls within the scope of the waiver, both the plea agreement and the waiver were entered into knowingly and voluntarily, and no miscarriage of justice would result from enforcing waiver. United States v. Andis, 333 F.3d 886, 889-90 (8th Cir. 2003) (en banc).

Here, the appeal of the denial of the two-level reduction is within the scope of the waiver. The only relevant exception to the waiver was Ghost Bear's "right to appeal the sentence for a determination of 'reasonableness' should the Court impose a sentence above the advisory guideline range established by the Court for the offense." Because Ghost Bear's sentence fell within the Guidelines range, and because Ghost Bear is not seeking review of the sentence's reasonableness, the appeal waiver applies. Further, there is no suggestion by Ghost Bear that he did not enter into the plea agreement knowingly and voluntarily. Finally, we conclude no miscarriage of justice would result from enforcing the waiver. See id. at 891-92 (the miscarriage-of-justice exception to enforcing an otherwise valid appeal waiver is extremely narrow and "an allegation that the sentencing judge misapplied the

Sentencing Guidelines or abused his or her discretion is not subject to appeal in the face of a valid appeal waiver").

IV

Affirmed.

_____