# United States Court of Appeals
## For the Eighth Circuit

_____

No. 22-2782
_____

United States of America

*Plaintiff - Appellee*

v.

Rashaun Ladale Williams

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Eastern District of Arkansas - Central
_____

Submitted: June 12, 2023
Filed: September 7, 2023
_____

Before GRUENDER, ARNOLD, and KELLY, Circuit Judges.
_____

GRUENDER, Circuit Judge.

Rashaun Williams appeals his sentence after pleading guilty to two drug crimes. He argues that the district court violated his Sixth Amendment right to counsel at sentencing when it allowed his lawyer to withdraw, neglected to appoint another one, and failed to warn Williams about the risks of proceeding on his own. Because we find that Williams waived his right to challenge these issues, we dismiss his appeal.

# I.

Williams was indicted on three counts of drug possession with intent to distribute. *See* 18 U.S.C. § 841(a)(1), (b)(1)(A)-(B). On the morning of trial, he decided to plead guilty to two of them in exchange for dismissal of the third. The district court performed the usual change-of-plea colloquy. Williams said that his mind was "crystal clear" and that he was not on any medications or drugs. Yet some of his responses showed hesitation. He said he had little time to go over the plea agreement with his lawyer and felt rushed. On top of that, he regretted not taking an earlier plea offer made while his mother's recent death weighed heavily on him. Still, the court found Williams competent to proceed with his proposed plea and confirmed that he was satisfied with his attorney.

The court then turned to the plea agreement itself. Williams said that he had not received any promises beyond those in the written agreement, though again he hesitated: "But do, like—do, like, being promised stuff in the beginning to cooperate, does that count, or that ain't—that don't matter?" Williams acknowledged that the agreement contained nothing like that and that any remaining issues, like his status as a career offender and credit for cooperation, would be dealt with at sentencing. The court then reviewed the rights that Williams was waiving by pleading guilty under the agreement. Among them, the right to appeal

> all non-jurisdictional issues, including, but not limited to, any issues relating to pre-trial motions, hearings and discovery and any issues relating to the negotiation, taking or acceptance of the guilty plea or the factual basis for the plea, including the sentence imposed or any issues that relate to the establishment of the Guideline range, except that the defendant reserves the right to appeal claims of prosecutorial misconduct and the defendant reserves the right to appeal the sentence if the defendant makes a contemporaneous objection because the sentence imposed is above the Guideline range that is established at sentencing.

In a separate paragraph, the agreement stated that Williams waived the right "to collaterally attack the conviction and sentence in any post-conviction proceeding, . . . except for claims based on ineffective assistance of counsel or prosecutorial misconduct." Finally, the agreement stated that Williams "has entered into [it] consciously and deliberately, by [his] free choice, and without duress, undue influence or otherwise being forced or compelled to do so." The court accepted Williams's plea.

A couple of months later but before sentencing, Williams's attorney moved to withdraw because the attorney-client relationship had soured. As proof, the attorney referenced a letter from Williams disagreeing with the presentence investigation report's recommendations and complaining about his attorney's representation and failure to adequately explain the plea deal. Williams had told his attorney "to fix this problem or get off my case [so] I can file inefficient counsel." In his motion, the attorney suggested that Williams "should have another lawyer" who can advise him about withdrawing his guilty plea. The next day, without a hearing or input from Williams, the district court granted the attorney's motion and stated that "Defendant will be pro se until he retains new counsel." Williams then filed a *pro se* motion for a downward departure based on his substantial assistance to the government. *See* U.S.S.G. § 5K1.1.

No new counsel was appointed, and the court held the sentencing hearing two weeks later, as scheduled. The court announced that Williams was "here present in court representing himself" and had "terminated his attorney-client relationship" with his lawyer. Williams said that he was ready to begin. No *Faretta* colloquy occurred. *See Faretta v. California*, 422 U.S. 806, 835-36 (1975).

Proceeding alone, Williams argued that he should be allowed to withdraw his guilty plea. Still dissatisfied with the PSR's recommendations, Williams claimed that he was misled about the plea agreement. Apparently, he had expected that he would not qualify as a career offender and that his cooperation with the government would result in a lower advisory sentencing guidelines range. The district court

denied Williams's motion "based on [his] earlier clear statements" at the change-of-plea hearing.

Before imposing sentence, the court offered Williams an opportunity for allocution. He tried to speak, but the court, perhaps not noticing, immediately turned to the Government. After hearing from the Government, the court sentenced Williams to 240 months' imprisonment, below the guidelines range of 292 to 365 months. It then asked if there was "anything else we need to tend to." Williams seized the opportunity: "I was just wondering, I was trying to ask before you passed the sentence down, was the proffer or any of that real or all of that—I don't get no reduction from all of that? I mean, that's the whole reason I kind of took the plea, because I knew I was going to get a reduction." The court responded that Williams got a reduction—down to 240 months.

Now with new counsel, Williams appeals, asking us to vacate his sentence and remand for a new one. He argues that the district court violated his Sixth Amendment right to counsel at sentencing and his right to allocution, *see* Fed. R. Crim. P. 32(i)(4)(A)(ii) ("Before imposing sentence, the court must . . . address the defendant personally in order to permit the defendant to speak or present any information to mitigate the sentence."). Relying on the plea agreement's waiver, the Government moved to dismiss the appeal. We took the motion with the case.

## II.

When pleading guilty, defendants may choose to waive appellate rights. *United States v. Andis*, 333 F.3d 886, 889 (8th Cir. 2003) (en banc). Sometimes, they appeal anyway. We must then review the waiver to confirm that the attempted appeal falls within its scope and that the defendant entered both the plea agreement and the waiver knowingly and voluntarily. *Id.* at 889-90. Yet even then, we will not enforce the waiver if doing so would result in a miscarriage of justice. *Id.* at 890. We review the validity and applicability of an appeal waiver *de novo*. *United States v. Scott*, 627 F.3d 702, 704 (8th Cir. 2010).

-4-

At the outset, Williams's appeal falls within the waiver's scope. The waiver covers "all non-jurisdictional issues" on direct appeal, including "any issues relating to the negotiation, taking or acceptance of the guilty plea" and to "the sentence imposed or any issues that relate to the establishment of the Guideline range." The Sixth Amendment and allocution issues that Williams raises are non-jurisdictional.

Williams tries to avoid this outcome by pointing to the waiver's exception for ineffective-assistance-of-counsel claims. But that exception appears in a separate paragraph specifically addressing *collateral* attacks in *post-conviction* proceedings. Williams's challenge—to the extent it can even be regarded as an ineffective-assistance claim—comes on direct appeal, not in a post-conviction proceeding. Thus, the plea agreement's broader appellate waiver of "all non-jurisdictional issues" applies to this appeal.

With scope resolved against Williams, we must dismiss his appeal unless his waiver was not knowingly and voluntarily made or unless doing so would result in a miscarriage of justice. *See Andis*, 333 F.3d at 889-90. On the first point, Williams knowingly and voluntarily waived his right to appeal. As the agreement itself states, and as the change-of-plea hearing confirmed, Williams reviewed the proposed agreement with counsel. *See United States v. Guzman*, 707 F.3d 938, 941-42 (8th Cir. 2013). He acknowledged that sentencing-related issues would be ironed out later. And although Williams hesitated in the hearing, the record reflects that he understood the significance of pleading guilty and waiving his appellate rights. The district court thoroughly questioned him about his understanding and gave him several chances to refuse going forward with the change of plea. *See* Fed. R. Crim. P. 11(b); *United States v. Griffin*, 668 F.3d 987, 990 (8th Cir. 2012). Each time, Williams assured the court that he wanted to plead guilty. Finally, after the court reviewed the appeal-waiver provisions, Williams said the plea agreement was in his best interest. We take him at his word.

On the second point, Williams's arguments about miscarriage of justice are somewhat muddled. In opposing the Government's motion to dismiss, he argues

that he never waived his right to counsel at sentencing so it would be a miscarriage of justice to enforce such a "waiver."[1] But Williams grapples with the wrong waiver. Whether Williams validly waived his right *to counsel* at sentencing is separate from whether he validly waived his right *to appeal* the issue at all. The former goes to the merits; the latter to reviewability. Here, we must decide reviewability—specifically, whether it would be a miscarriage of justice to enforce *non*reviewability.

With the right waiver in focus, Williams makes two colorable arguments about a potential miscarriage of justice. The first asserts that ineffective-assistance claims generally satisfy the miscarriage-of-justice exception under our precedent. As for the other, Williams maintains—without citing legal authority—that enforcing the waiver would be a miscarriage of justice because it relied on an implicit assumption: that he would be "in a position to . . . put his absolute best foot forward before the trial court." In other words, he could not have foreseen that he would be deprived of counsel at sentencing. Thus, he says, he should be allowed to challenge that deprivation on appeal despite the broad waiver provision.

Neither persuades us. The miscarriage-of-justice exception "is a narrow one" that "arise[s] in only limited contexts." *United States v. Sisco*, 576 F.3d 791, 798 (8th Cir. 2009). We have recognized it for challenges to an illegal sentence, to a sentence that violates the terms of an agreement, and where ineffective assistance of counsel rendered the appeal waiver itself unknowing and involuntary. *See Andis*, 333 F.3d at 891 (citing *DeRoo v. United States*, 223 F.3d 919, 923-24 (8th Cir. 2000)). None apply here. Williams's sentence is below the statutory maximum. *See United States v. Howard*, 27 F.4th 1367, 1370 (8th Cir. 2022) (per curiam). He

---

[1]Indeed, Williams discusses the standard for evaluating the validity of a waiver of the right to counsel. That standard looks to whether the waiver "is both voluntary, and intelligently and knowingly made," something courts determine by reviewing the record for evidence of any *Faretta* colloquy or the defendant's familiarity with the criminal justice system. *United States v. Crawford*, 487 F.3d 1101, 1105-06 (8th Cir. 2007). Not our task here—Williams's appeal waiver came two months before his purportedly invalid waiver of the right to counsel, and he was represented at that time.

does not argue that his sentence violates the terms of his agreement. And his ineffective-assistance challenge concerns assistance at sentencing, not in the making of the plea agreement. *See DeRoo*, 223 F.3d at 923-24; *cf. Griffin*, 668 F.3d at 989 (finding no miscarriage of justice even where the appellant's ineffective-assistance argument concerned the making of the plea agreement itself because she could pursue her challenge in a 28 U.S.C. § 2255 proceeding). We therefore agree with the Government that our precedents do not support finding a miscarriage of justice.

Nor does Williams's scant "implicit assumption" argument convince us to broaden the exception to suit his case. He essentially argues that *this* right is so important and that *this* error was so egregious that we cannot let it stand because of a mere appeal waiver. Yet he offers no principled way to apply the miscarriage-of-justice exception that would not "swallow the general rule that waivers of appellate rights are valid." *See Andis*, 333 F.3d at 891. After all, defendants may waive important constitutional rights when pleading guilty. *Parke v. Raley*, 506 U.S. 20, 29 (1992). As a corollary, "we would be hard-pressed to find a reason to prohibit a defendant from waiving [the] purely statutory right" to appeal. *Andis*, 333 F.3d at 889. Therefore, appellate waivers are generally valid as long as they satisfy the limits outlined above. *Id.* at 889-890. Williams's waiver does.

Consider that the district court might have erred for a whole host of reasons within the scope of his waiver. Some might have even been constitutional errors. *Cf., e.g.*, *United States v. Lugo-Barcenas*, 57 F.4th 633, 637 (8th Cir. 2023) (reviewing equal-protection challenge to sentence because it was not within the scope of the appeal waiver); *Griffin*, 668 F.3d at 990 (dismissing an appeal involving a speedy-trial challenge under the Sixth Amendment). Would enforcing an appellate waiver against all constitutional errors result in a miscarriage of justice? If not, what makes Williams's claimed constitutional error special? He does not say. *See United States v. Whitlow*, 815 F.3d 430, 433 n.2 (8th Cir. 2016) ("[I]t is not this court's job to research the law to support an appellant's argument." (quoting *Viking Supply v. Nat'l Cart Co.*, 310 F.3d 1092, 1099 (8th Cir. 2002))); *see also United States v. Stuckey*, 255 F.3d 528, 531 (8th Cir. 2001) ("[W]e regularly decline to consider

cursory or summary arguments that are unsupported by citations to legal authorities.").

Consider, too, that even if Williams had an attorney at sentencing, that attorney might have been ineffective. We doubt that enforcing an appeal waiver there would result in a miscarriage of justice. *See DeRoo*, 223 F.3d at 923-24; *United States v. Djelevic*, 161 F.3d 104, 107 (2d Cir. 1998) (per curiam) (rejecting "emphatically" the contention that an otherwise valid waiver should be set aside for ineffective counsel "not at the time of the plea, but at sentencing" because "[i]f we were to allow a claim of ineffective assistance of counsel at sentencing as a means of circumventing plain language in a waiver agreement, the waiver of appeal provision would be rendered meaningless"); *United States v. White*, 307 F.3d 336, 344 (5th Cir. 2002) (agreeing with *Djelevic*). Williams fails to show how, under his theory, woefully ineffective counsel is less problematic than no counsel at all.

Might the district court have arrived at a different guidelines range or sentence had Williams been represented? Possibly. Williams speculates that effective counsel at sentencing could have secured a more favorable guidelines range, more credit for substantial assistance to the government, no career-offender status, and maybe even a fighting chance at withdrawing his guilty plea. But this argument amounts to little more than an attempted end run around the waiver to attack his sentence, *see Djelevic*, 161 F.3d at 107, and Williams does not appeal the denial of his motion to withdraw his guilty plea. Altogether, enforcing Williams's waiver would not result in a miscarriage of justice.[2] *See Griffin*, 668 F.3d at 990-91.

---

[2]Of course, we certainly do not condone what transpired here. The district court allowed Williams to appear at his sentencing hearing alone and without adequate warning about the risks of self-representation, a clear *Faretta* violation. *See Crawford*, 487 F.3d at 1105.

\*　　　\*　　　\*

Recognizing the validity of appeal waivers provides defendants with an important bargaining chip. *See Andis*, 333 F.3d at 895 (M. Arnold, J., concurring) ("One of the few things that a criminal defendant has to trade with his or her accuser is the right to appeal . . . ."). Applying the miscarriage-of-justice exception here would weaken that presumption of validity and reduce defendants' bargaining power. *See Howard*, 27 F.4th at 1371 (Gruender, J., concurring). This is especially so where an error may have been obvious. *Id.* ("[A]ppeal waivers would not empower criminal defendants in plea negotiations unless we enforced them against meritorious claims."). Here, we have a valid appeal waiver and no showing that a miscarriage of justice would result from its enforcement. Accordingly, we dismiss.

KELLY, Circuit Judge, dissenting.

In his plea agreement, Williams agreed to waive the right to appeal all non-jurisdictional issues. Everyone agrees that Williams has raised a non-jurisdictional issue that falls within the scope of his appeal waiver: he seeks a remand because he was denied counsel at his sentencing hearing. The question is whether enforcing the otherwise valid appeal waiver in this case would result in a miscarriage of justice. See Andis, 333 F.3d at 891 ("Assuming that a waiver has been entered into knowingly and voluntarily, we will still refuse to enforce an otherwise valid waiver if to do so would result in a miscarriage of justice."). Because I believe the complete denial of counsel at sentencing falls within this narrow exception, I respectfully dissent.

We have described the miscarriage of justice exception, or "the illegal sentence exception," as "extremely narrow." See id. at 892 ("Any sentence imposed within the statutory range is not subject to appeal."). And we have cautioned, as the court notes, that this narrow exception "will not be allowed to swallow the general rule that waivers of appellate rights are valid." Id. at 891. Here, however, Williams does not appeal his sentence. Rather, he says that he was denied counsel at

-9-

sentencing, without any <u>Faretta</u>-type inquiry into whether he desired to represent himself.  That error, in my view, is qualitatively different.

The Supreme Court has recognized that some errors reflect a "defect affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself."  <u>Neder v. United States</u>, 527 U.S. 1, 8 (1999) (citation omitted).  One such error is a complete denial of counsel.  <u>Id.</u>  (citing <u>Gideon v. Wainwright</u>, 372 U.S. 335 (1963)).  These structural errors "necessarily render a trial fundamentally unfair."  <u>Id.</u> (citation omitted).  And while most constitutional errors are subject to harmless error review, structural errors are not, in part because the consequences "are necessarily unquantifiable and indeterminate."  <u>Id.</u> at 10-11 (citation omitted).

Williams, of course, did not go to trial.  But a criminal defendant has a constitutional right to counsel at every critical stage of the criminal proceedings, including sentencing.  <u>See</u> <u>United States v. Thompson</u>¸713 F.3d 388, 394 (8th Cir. 2013) ("[T]he Supreme Court has held that 'sentencing is a critical state of the criminal proceedings at which [a defendant] is entitled to the effective assistance of counsel.'") (citations omitted).  A "complete denial of counsel" at sentencing is the type of error that, like a structural error, renders the proceeding "fundamentally unfair."  And recognizing it as falling into the narrow miscarriage of justice exception would not threaten to "swallow the rule that waivers of appellate rights are valid," <u>Andis</u>, 333 F.3d at 891, because structural errors, or those sufficiently akin to them, are narrowly defined.  <u>See</u> <u>Neder</u>, 527 U.S. at 8 (noting that structural errors fall into a "very limited class" and citing cases).

Not enforcing the appeal waiver here—where doing so would allow an error affecting the fundamental fairness of the criminal proceedings to go unchecked—would also not upend good faith plea negotiations.  As an initial matter, I question how much "power" an appeal waiver gives criminal defendants in plea negotiations.  Theoretically, the parties would enter plea negotiations with equal bargaining power, and a defendant would receive a benefit of equal value from the government in return for waiving their right to appeal.  As a practical matter, however, that is not how the

-10-

give-and-take works in many, if not most, cases.  In any event, even if the playing field is level, both prosecutors and defendants have a vested interest in ensuring a criminal proceeding is fundamentally fair.  It could hardly be said that the government would purposely bargain for the result here.

_____