# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 10-3381

———————

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of South Dakota. |
| Ladarana Mees, | * | |
| | * | |
| Appellant. | * | |

———————

Submitted: March 17, 2011
Filed: May 31, 2011

———————

Before WOLLMAN, MURPHY, and GRUENDER, Circuit Judges.

———————

WOLLMAN, Circuit Judge.

Ladarana Mees pleaded guilty to theft concerning programs receiving federal funds, in violation of 18 U.S.C. § 666(a)(1)(A), and was sentenced to the statutory maximum of 120 months' imprisonment. Mees appeals his sentence, asserting that the district court[1] committed procedural error when it departed upwards from the advisory U.S. Sentencing Guidelines range and when it considered ethnicity and other improper factors during sentencing. Mees also argues that the sentence is substantively unreasonable. We affirm.

---

[1]The Honorable Charles B. Kornmann, United States District Judge for the District of South Dakota.

## I. Background

From 1993 until 2009, Mees was the finance officer for the Standing Rock Housing Authority (Housing Authority) of the Standing Rock Sioux Tribe. The Housing Authority receives federal funding to help low-income Native American families obtain housing by building new homes and renovating existing homes. Mees began embezzling funds in 2003 by writing checks from the Housing Authority to individuals and businesses under the guise of purchasing air purifiers, heaters, water purifiers, and filters. Some of these items were purchased at significantly inflated prices, while others never existed or were never received. The individuals and businesses would send part or all of the money to Mees's mother or a business that he controlled. The Housing Authority suffered a total loss of $1,418,936 because of Mees's scheme. In October 2009, Mees was indicted with nine counts of theft concerning programs receiving federal funds, in violation of § 666(a)(1)(A), and ten counts of money laundering, in violation of § 1956(a)(1)(B)(i).

Mees pleaded guilty to count one, a theft concerning federal funds in the amount of $19,650.00, and the remaining counts were dismissed. Prior to sentencing, a presentence investigation report (PSR) was prepared that set forth Mees's criminal history, which included only one speeding ticket that was paid in 1999. The PSR determined that Mees had no criminal history points, a criminal history category of I, and an adjusted offense level of 27, resulting in an advisory Guidelines range of 70 to 87 months' imprisonment.[2]

---

[2]The adjusted offense level included: a 16-level increase because the loss exceeded $1 million, see U.S. Sentencing Guidelines § 2B1.1(b)(1)(I); a 2-level increase because the offense involved sophisticated means, id. § 2B1.1(b)(9)(C); a 4-level increase for Mees's role as an organizer or leader, id. § 3B1.1(a); a 2-level increase because he was in a position of trust, id. § 3B1.3; and a combined 3-level reduction for his acceptance of responsibility, id. § 3E1.1(a), (b).

Before sentencing, the district court notified the parties that it was considering "a very substantial upward departure" to a criminal history category of IV or higher because the criminal history category assigned to Mees "seriously misrepresents his past criminal activity." The district judge stated that this was the "most outrageous" embezzlement case he had seen in his fifteen years as a federal judge.

At sentencing, Wilbur Red Tomahawk—a member of the Standing Rock Sioux Tribe and the Housing Authority's newly-hired executive director—testified that the amount embezzled could have funded the construction of fifteen new homes or the renovation of thirty to forty existing homes. The funds, he asserted, would have assisted 490 families who were waiting for housing assistance and who constituted the "poorest of the poor." Sentencing Tr. at 8. He requested that the district court seek full restitution from Mees. The government and Mees both requested a sentence within the advisory Guidelines range of 70 to 87 months' imprisonment.

Describing the offense, the district court noted that Mees had developed a "very clever scheme" involving his own mother and that he had committed "a very calculated, cold hearted scheme to defraud people who had trust[ed] in [him]." Id. at 25-26. The district court acknowledged that it was limited to seeking restitution for the one count that Mees had pleaded guilty to, $19,650. After reciting the advisory Guidelines range, the district court stated that it found that an upward departure was appropriate and that Mees's criminal history category should be IV instead of I, explaining that "[a] criminal history category of I, II, or III would not represent the actual criminal history of this defendant. He is a big time crook and has been such for many years." Id. at 27. It also found "that a lower criminal history category would substantially under-represent the actual criminal history of this defendant. His criminal activities have been widespread and extensive." Id. at 28. It determined that Mees's criminal history also included his failure to pay income tax on the embezzled funds and reasoned that each time Mees stole money should be construed as a separate criminal act because it was "as though he walked into the

bank virtually every day and committed a bank robbery." Id. at 27. Applying a criminal history category of IV, the district court determined that the new advisory range was 100 to 125 months' imprisonment and noted that the statutory maximum was 120 months. It then sentenced Mees to 120 months' imprisonment, three years of supervised release, and ordered him to pay restitution of $19,650 and a $100 special assessment.

## II. Discussion

### A. Significant Procedural Error

We review the imposition of sentences by applying a deferential abuse-of-discretion standard. United States v. Feemster, 572 F.3d 455, 461 (8th Cir. 2009) (en banc). We first ensure that the district court did not commit a significant procedural error. Id. Procedural error includes "failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range." Id.

#### 1. Upward Departure

Mees contends that the district court erred procedurally when it determined that Mees's criminal history category underrepresented his actual criminal history. Though Mees's counsel asserted that a within-Guidelines sentence was reasonable, he did not object to the district court's upward departure. Accordingly, we review only for plain error. To establish plain error, Mees must show that there was error, that the error was plain, and that the error affected his substantial rights. See United States v. Miller, 557 F.3d 910, 916 (8th Cir. 2009).

-4-

Section 4A1.3 provides that an upward departure may be warranted if "reliable information indicates that the defendant's criminal history category substantially under-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes." Reliable information may include prior convictions and "[p]rior similar adult criminal conduct not resulting in a criminal conviction." U.S. Sentencing Guidelines § 4A1.3(a)(2)(E) (2009). In determining the extent of an upward departure, we have described the process that a district court should use:

> To impose an upward departure under § 4A1.3, the sentencing court first must proceed along the criminal history axis of the sentencing matrix, comparing the defendant's criminal history with the criminal histories of other offenders in each higher category . . . .

United States v. Azure, 536 F.3d 922, 931 (8th Cir. 2008) (quoting United States v. Collins, 103 F.3d 143, 145 (8th Cir. 1997)). We do not require that the process be a "ritualistic exercise in which the sentencing court mechanically discusses each criminal history category it rejects en route to the category that it selects." Id. But the sentencing court must adequately explain why it determines that the intermediary categories fail to meet the purposes of § 4A1.3. Id.

Mees asserts that the PSR indicated that his case "was a garden variety fraud case" and that without any criminal convictions or adult criminal conduct besides the instant offense, there is no proper rationale to depart upwards. He appears to argue that the district court erred in relying on § 4A1.3(a)(2)(E) when it determined that Mees's criminal history category was underrepresented because the instant offense included the entire embezzlement scheme.[3] We disagree, for two reasons. First, the

_____

[3]In its statement of reasons accompanying the written judgment, the district court "found [Mees's] Criminal History Category I substantially under-represents the seriousness of [his] criminal history and the likelihood that [he] will commit other

instant offense—one charge for theft concerning federal funds in the amount of $19,650—did not encompass all of Mees's criminal conduct that occurred during the five-year embezzlement scheme. Second, § 4A1.3 permits the district court to depart upwards when reliable information indicates that the defendant's criminal history category substantially underrepresents the seriousness of the defendant's criminal history. Mees did not object to the PSR's discussion of his five-year embezzlement scheme. The district court properly relied on the PSR to upwardly depart because it constituted reliable information about Mees's prior similar adult criminal conduct that had not resulted in a criminal conviction.

Mees contends that the district court erred procedurally when it "arbitrarily increased the criminal history category without mentioning the criminal histories of other defendants in any of the higher criminal history categories." See Azure, 536 F.3d at 931. The district court explained that a lower criminal history category would be insufficient because Mees had been a "big time crook" for many years and his criminal activities had been "widespread and extensive." Sentencing Tr. at 27-28. Although the district court did not specifically mention that it had considered the criminal histories of other offenders in each intermediate criminal history category, its findings were adequate to explain and support the departure in this particular case, and thus there was no error.

---

crimes." This tracks the language of § 4A1.3, which provides that an upward departure may be warranted if "reliable information indicates that the defendant's criminal history category substantially under-represents the seriousness of the defendant's criminal history *or* the likelihood that the defendant will commit other crimes." (emphasis added). Mees's argument that the record fails to support a finding that he is especially likely to commit other crimes ignores the disjunctive nature of § 4A1.3, which contemplates a departure for defendants who—like Mees—have underrepresented criminal history, irrespective of the likelihood that they will commit future crimes.

Mees also argues that the district court impermissibly double counted when it used the same relevant criminal conduct both to increase his offense level and to upwardly depart to a criminal history category of IV. In United States v. Thornberg, we rejected a similar argument, noting that "[t]he guidelines embody the notion that the severity of a sentence should be determined both by the seriousness of the offense" and "by the offender and the need to deter him from further criminal activity." 326 F.3d 1023, 1027 (8th Cir. 2003) (internal quotation marks omitted). "This same reasoning holds true when the conduct that has been used to establish the offense level is also used to assess the need for an upward departure under § 4A1.3." Id. (citing United States v. Thin Elk, 321 F.3d 704, 708 n.3 (8th Cir. 2003)). Mees's criminal conduct involved theft concerning federal funds resulting in a total loss of $1,418,936 over five years. This scheme impacted hundreds of families who needed housing and constituted the "most outrageous" scheme that the district judge had ever seen in his court. Sentencing Tr. at 27. The amount of loss, duration, and repetitive nature of the embezzlement scheme; Mees's role as a leader; and the fact that he defrauded people who trusted him were relevant both to establish the seriousness of the offense through his offense level and the need for an upward departure under § 4A1.3. Accordingly, the district court did not engage in impermissible double counting by departing upwards to criminal history category IV.

### 2. Section 3553(a) Factors

Mees argues that the district court inadequately explained its decision under § 3553(a) and that it did not "undertake an individualized assessment of Mees in relation to the statutory sentencing factors or sufficiently justify its substantial above-the-range sentence with reference to any section 3553(a) factor." Contrary to his contention, however, the district court did not impose a substantial above-the-range sentence, because the district court's upward departure was proper. Furthermore, there is no requirement that the district court recite every § 3553(a) factor, United States v. Battiest, 553 F.3d 1132, 1136 (8th Cir. 2009), and a defendant's PSR,

arguments by the parties, and other evidence at the sentencing hearing all provide the court with enough information on which to base a sentencing decision. See United States v. Struzik, 572 F.3d 484, 487 (8th Cir. 2009). After reviewing the record, we find ample evidence that the court considered the § 3553(a) factors, explicitly referencing the § 3553(a) factors and stating "And I've detailed, I believe, some of those factors in my discussion here." Sentencing Tr. at 29. The court discussed the nature and circumstances of the offense and the history and characteristics of the defendant, the need to avoid unwarranted sentencing disparities between similar defendants, and the need to provide restitution for the victims. The district court's reasoning was sufficient, and thus we conclude that the district court did not commit a significant procedural error.

B. Substantive Error

Mees challenges the substantive reasonableness of his sentence. In the absence of procedural error, we consider the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard, taking into account the totality of the circumstances. Feemster, 572 F.3d at 461. "If the defendant's sentence is within the Guidelines range, then we may but are not required to, apply a presumption of reasonableness." Id. (internal quotation marks omitted). "A district court abuses its discretion when it (1) fails to consider a relevant factor that should have received significant weight; (2) gives significant weight to an improper or irrelevant factor; or (3) considers only the appropriate factors but in weighing those factors commits a clear error of judgment." Id. (internal quotations marks omitted).

Mees asserts that the district court committed substantive error when it considered ethnicity and other improper factors in determining his sentence. U.S. Sentencing Guidelines § 5H1.10 provides that race, sex, national origin, creed, religion, and socio-economic status are not relevant in the determination of a sentence. During sentencing, the district court stated that it had "never been a fan of

the Federal Sentencing Guidelines. . . . And the irony is that the Sentencing Guidelines were especially harsh toward Indian people, Native American people, who come into federal court and receive a sentence about three times longer than what any Norwegian receives in state court." Sentencing Tr. at 26. Mees asserts that a "'reasonable observer' could conclude, after hearing or reading the district court's remarks in this case, that the court sought to balance the unfairness it perceived in the lengthy sentences received by Native Americans in federal court by giving the longest possible sentence to a white defendant whose victims were Native American." He relies on United States v. Kaba, 480 F.3d 152, 159 (2d Cir. 2007), to assert that the sentence must be vacated and the case remanded to another district judge. We disagree, because the remark was made in response to Mees's counsel's statement that the U.S. Sentencing Guidelines "are fair—shouldn't say that—but they are appropriate as a matter of law, . . . ." The record demonstrates that any comments regarding race or national origin were not offered as an explanation for imposing the sentence. Instead, they reflected the district court's disagreement with Mees's counsel that the Guidelines were "fair" and that a Guidelines sentence of 70 to 87 months' imprisonment was appropriate as a matter of law.

Mees also argues that the district court improperly considered his socio-economic status when it stated that it was relying on Mees's ability to pay restitution in determining his sentence. The district court compared Mees to another criminal defendant who had embezzled more than $300,000 from a hospital. It stated that a defendant's possibility of paying the restitution was a "big factor" in these types of cases. Id. at 23. The district court was unable to order Mees to pay full restitution because it was limited to the theft amount in Mees's count of conviction, not by his actual ability to pay or his socio-economic status. 18 U.S.C. § 3663. Thus, the district court's statement expressed its frustration about its inability to order restitution for an amount closer to the total loss of $1,418,936 rather than a comment on Mees's socio-economic status.

Mees implausibly contends that the district court indicated that it would have sentenced him more favorably had he committed the crime as a result of a drug or alcohol addiction problem. In describing the scheme, the district court stated, "This isn't a crime that arose out of drunkenness or being high on drugs or something. This is a very calculated, cold-hearted scheme to defraud people who had trust in you." Sentencing Tr. at 26. As we read the record, the district court did not use Mees's lack of an addiction to justify the sentence, but rather was describing Mees's state of mind as he carried out the embezzlement scheme.

Having found neither procedural error nor anything to rebut the presumption of reasonableness that attaches to Mees's within-Guidelines-range sentence, we conclude that the district court did not abuse its discretion in imposing the sentence.

### III. Conclusion

The sentence is affirmed.

_____