# United States Court of Appeals
## For the Eighth Circuit

_____

No. 15-3784

_____

United States of America

*Plaintiff - Appellee*

v.

Julilath Kouangvan, also known as Julilath Sisauyhoat

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Southern District of Iowa - Des Moines

_____

Submitted: September 19, 2016
Filed: January 4, 2017

_____

Before RILEY, Chief Judge, MURPHY and SMITH, Circuit Judges.

_____

RILEY, Chief Judge.

Julilath Kouangvan claims the length of her prison sentence was influenced by race or national origin (both hers and the victims'), the fact she immigrated to the United States, and her anticipated inability to afford to pay restitution—or at least that someone observing her sentencing hearing could have gotten that impression. We

detect no reliance on forbidden considerations in the district court's[1] explanation of Kouangvan's sentence, nor any encouragement of such reliance in the government's position at sentencing. With appellate jurisdiction under 28 U.S.C. § 1291, we therefore affirm.

## I.    BACKGROUND

Kouangvan pled guilty to filing a false income-tax return. See 26 U.S.C. § 7206(1). At sentencing, several of her friends and acquaintances testified they gave Kouangvan hundreds of thousands of dollars to invest, with the expectation she would earn them high rates of return. She did not. Instead, she spent some of the money and shuffled the rest around, making enough repayments to keep her investors mollified while urging them to "reinvest" their gains—that is, to give her more money and let her keep what she already had.

By the time Kouangvan fell behind in her scheme and the money ran out, the large amounts of cash moving through her bank accounts—along with documents she submitted when she unsuccessfully filed for bankruptcy—attracted the attention of several law enforcement agencies, including the Criminal Investigation Division of the Internal Revenue Service. In exchange for the government dropping other charges, Kouangvan pled guilty to the tax-fraud count, on the theory that she should have reported the money she received as income. She also agreed to pay restitution to eight of the people who gave her the money. See 18 U.S.C. § 3663(a)(3) (authorizing restitution "to the extent agreed to by the parties in a plea agreement").

At sentencing, the district court adopted the advisory sentencing range recommended in the plea agreement (10 to 16 months) and heard argument on what sentence to impose. Arguing for probation, Kouangvan emphasized her difficult

---

[1]The Honorable John A. Jarvey, Chief Judge, United States District Court for the Southern District of Iowa.

childhood, including the nearly two years her family spent as refugees in Thailand after fleeing the communist regime in Laos. Kouangvan also introduced testimony about the practice of informal money lending in Lao immigrant communities, suggesting that even though the district court had already determined the amounts she received were investments, not loans, "[t]here [still] was some semblance of recognition and interaction within that culture that allowed these payments or percentages to continue." And Kouangvan suggested probation offered the "best opportunity" for her to pay the substantial restitution award—over $522,000 to the investors, plus nearly $200,000 in unpaid taxes—because she could keep cleaning houses, which was her only real source of income.

This appeal is about what came next in the government's counterargument and the district court's explanation of how it set Kouangvan's sentence. The first statement Kouangvan takes issue with was the prosecutor's opening line: "What happened here is not cultural, it's criminal, and she should be punished as such. She victimized *her fellow Laotians*. I think most notable here, considering she's discussing so much about her culture, *she victimized fellow Laotians*." (Emphasis added). The other statements were from the district court:

> I looked at the pictures from the refugee camp and I felt badly, and then I thought, *what a way to pay back the United States of America for giving you a far, far, far better life than you could have dreamed of there*, to come here and dupe *your fellow Laotians*, promised them a lot, gave them phony collateral, and then you paid them back and then took it back. And then . . . you did threaten them. You made it look like they could be in trouble, too, and they had done nothing wrong. You took people—you crushed little people, and that's the part that is just so painful to watch because I know how this is going to go. *We're going to try and squeeze every nickel we can out of you, and we're just not going to get a lot.* And so you've hurt irrevocably some good people that worked hard their whole life and you just took it from them.

. . . .

> . . . I've had many situations where bank vice presidents embezzle three, four hundred thousand dollars from a bank, and each of them has done prison time. The difference is this isn't an institutional theft, not to diminish the importance of institutional theft, but rather a theft from unsophisticated, trusting persons *from other countries*.

(Emphasis added).

The district court ultimately sentenced Kouangvan to 14 months in prison. Kouangvan did not make any objection to the sentence or the district court's reasons given at the time. The only issue she raises on appeal is the claimed impact of improper considerations on her sentence. See, e.g., United States v. Mees, 640 F.3d 849, 856 (8th Cir. 2011) (recognizing "race, . . . national origin, . . . and socio-economic status are not relevant in the determination of a sentence"); United States Sentencing Guidelines § 5H1.10.

## II.    DISCUSSION

Usually, we do not consider asserted mistakes that were not first raised to the district court unless the error is "plain" on appeal and "affects [a party's] substantial rights." Fed. R. Crim. P. 52(b); see also United States v. Pirani, 406 F.3d 543, 549 (8th Cir. 2005) (en banc). We have sometimes followed this approach in cases closely resembling this one. See, e.g., United States v. Burnette, 518 F.3d 942, 949 (8th Cir. 2008) ("[The defendant] argues that the district court considered an improper factor . . . [in setting his sentence]. This is a claim of procedural error, reviewed here for plain error."). But in other, equally analogous cases, we have gone directly to the merits without requiring a contemporaneous objection, apparently reasoning consideration of "ethnicity and other improper factors" would make a sentence substantively unreasonable, rather than procedurally defective. Mees, 640 F.3d at 856; accord United States v. Pena, 339 F.3d 715, 717-18 (8th Cir. 2003); see also

-4-

United States v. Bain, 586 F.3d 634, 641 (8th Cir. 2009) (per curiam) ("No objection is needed to preserve an attack on the substantive reasonableness of a sentence."). But cf. United States v. Wiley, 509 F.3d 474, 477 (8th Cir. 2007) ("[S]uch a requirement [of an objection in the district court] is not warranted, at least where a party asserts only that *the length* of the sentence is unreasonable."). We need not resolve the apparent conflict between these two lines of cases here, because Kouangvan is not entitled to relief even if we leave the heightened plain-error standard aside and simply review for abuse of discretion. See Mees, 640 F.3d at 856 ("'A district court abuses its discretion when it . . . gives significant weight to an improper or irrelevant factor.'" (quoting United States v. Feemster, 572 F.3d 455, 461 (8th Cir. 2009) (en banc))).

We begin with the statements Kouangvan believes reflect improper consideration of "race, national origin, and immigration status," namely the government and district court repeatedly referring to her conning her "fellow Laotians." Although nationality and such characteristics must not play any role in shaping a defendant's sentence, the district court is not forbidden from ever acknowledging or mentioning them. See Pena, 339 F.3d at 718. Taking the challenged statements in context, we think it clear the point of emphasizing the background Kouangvan shared with many of the people whose money she took was to explain the district court's perception of "the nature and circumstances of the offense," 18 U.S.C. § 3553(a)(1), and the severity of her misconduct, id. § 3553(a)(2)(A)—how she used her place in the Lao immigrant community to develop connections she then exploited to convince vulnerable people to hand over their financial "nest eggs" in return for vague promises and worthless papers. The district court's immediately preceding sentences made the contextual meaning explicit: "You [Kouangvan] duped relatively unsophisticated investors and you used their culture against them. That's how you were able to get their trust, and you took advantage of that association."

We note Kouangvan first introduced and emphasized her Laotian heritage and culture as a basis for sentencing leniency because informal loans allegedly are common within the Laotian culture, and she was pursuing this practice. The district court did not accept Kouangvan's proposition. Having raised her race and national origin, as the government asserts, Kouangvan, without more, should not be permitted to use her Laotian culture as both a shield and a sword.

Kouangvan also emphasizes the "striking[] similar[ity]" between the district court's comment "what a way to pay back the United States of America for giving you a far, far, far better life than you could have dreamed of [as a refugee in Thailand], to come here and dupe your fellow Laotians" and a portion of the explanation we found to necessitate resentencing in United States v. Onwuemene: "'This country was good enough to allow you to come in here and to confer upon you . . . a number of the benefits of this society, form of government, and its opportunities, and you repay that kindness by committing a crime like this.'" United States v. Onwuemene, 933 F.2d 650, 651 (8th Cir. 1991) (omission in original). We acknowledge the similarity of the statements taken in isolation, but our decision in Onwuemene did not focus on that single line or treat it as demonstrating consideration of improper factors on its own. To the contrary, we quoted the district court in that case as explicitly stating, "'The other thing that I feel that warrants imposition at the high end of the guideline range: You are not a citizen of this country'" and "'We have got enough criminals in the United States without importing any.'" Id.

There is nothing comparable here. The district court's statement in this case was offered as a counterpoint to "look[ing] at the pictures from the refugee camp and . . . fe[eling] badly" for Kouangvan. The comment clearly expressed the district court's conviction that the hardship Kouangvan faced as a child did not excuse or diminish the severity of the crime she committed long after settling in the United States, rather than any idea that her status as an immigrant somehow warranted a

harsher punishment. Cf. Pena, 339 F.3d at 717-18 (deciding another similar statement—"'You've been given an opportunity to come to the United States and become a productive citizen, but, in fact, you have repaid this courtesy by becoming a drug dealer'"—viewed in context, did not reflect an improper consideration, and distinguishing the statement from Onwuemene as "expressly indicat[ing] that nationality was a factor in sentencing"). The district court did not abuse its discretion by giving any weight to race or national origin in establishing its sentence for Kouangvan.

We reach the same conclusion with respect to Kouangvan's suggestion that the district court improperly considered her socioeconomic status. To be sure, we see no way to understand the statement "We're going to try and squeeze every nickel we can out of you, and we're just not going to get a lot" except as an observation that Kouangvan would likely be unable to pay the restitution the district court had ordered, particularly because there was no evidence she had tried to hide assets or obstruct collection efforts.[2] However, it is far from clear that the district court's observation resulted in a longer prison sentence than Kouangvan would have received otherwise. Unlike in the one case (from a different court) Kouangvan relies on, the district court here did not label Kouangvan's anticipated inability to pay restitution an "'aggravating factor.'" United States v. Burgum, 633 F.3d 810, 814 (9th Cir. 2011) ("'One additional aggravating factor . . . is I just think realistically the chances of restitution in this case are probably slim, maybe even null in light of . . . [the defendant] not really having the finances or the financial condition to even pay a fine.'"). Nor did the district court otherwise signal or even imply it was increasing Kouangvan's prison sentence to compensate for the expectation of not recovering

[2]The government explains the district court's statement as simply noting the fact Kouangvan's investors "were unlikely to ever get their money back," which increased "the seriousness of the offense and the harm to the victims." Yet imprisoning poor criminals longer because they cannot afford to make their victims financially whole is precisely what we must not do.

much in restitution. Cf., e.g., Onwuemene, 933 F.2d at 651 (vacating a sentence because the district court described an improper consideration as "'[an]other thing that I feel that warrants imposition at the high end of the guideline range'"); United States v. Kaba, 480 F.3d 152, 155-58 (2d Cir. 2007) (vacating a sentence because the district court stated, "'it is entirely reasonable to assume that people from the Guinea community are going to say gee, do you hear what happened to [the defendant]? . . . I hope that that has some effect here that will deter other people from that background from doing what you've done here'").

To the contrary, the district court appears to have mentioned the likelihood of Kouangvan's investors not receiving their money back primarily as part of a general background description of what she did and the harm she caused. See 18 U.S.C. § 3553(a)(1), (2)(A). Beyond that, the statement served as a response to Kouangvan's repeated suggestions that her demonstrated willingness to pay restitution justified a sentence without any prison time. By responding that, realistically, Kouangvan's restitution payments probably would not amount to much, the district court simply made clear why the large sums she was ordered to pay did not materially affect the length of her prison sentence, in either direction. Cf. Pena, 339 F.3d at 718 ("The statement regarding [the defendant's] political asylum was, unlike the statement in Onwuemene, not made as part of an explanation for the sentence imposed. Rather, it was an observation about testimony that [the defendant] had introduced regarding his struggle to come to the United States."). That was not an abuse of discretion.[3]

---

[3] In defending the district court's statements, the government cites the order in which the district court denied Kouangvan's post-sentencing request to be released on bond while awaiting the results of this appeal. Though we find much of the reasoning in the order persuasive, we give little weight to the district court's account of what it meant by the challenged statements, as distinct from our reading of them, because the repudiation of improper considerations in such a retrospective order "may have arisen from a variety of motives, including [the district court's] realization subsequent to the sentencing hearing that [they] would trigger, and would not withstand, appellate review." Onwuemene, 933 F.2d at 652 n.1.

Finally, we are not swayed by Kouangvan's insistence that even if we doubt the district court was actually biased, resentencing is necessary as long as "[a] reasonable observer, hearing or reading the court's remarks," would perceive reliance on an improper factor. See Kaba, 480 F.3d at 156 ("Because 'justice must satisfy the appearance of justice, even the appearance that the sentence reflects a defendant's race or nationality will ordinarily require a remand for resentencing.'" (quoting United States v. Leung, 40 F.3d 577, 586 (2d Cir. 1994))). Perhaps the district court and the prosecutor should have been clearer when making statements bearing on nationality and socioeconomic status at sentencing, to reduce the risk of appearing to be influenced improperly by such concerns. Yet we believe a hypothetical reasonable observer would take what was said in context, just as we do. After careful review of the statements identified by Kouangvan, considering how and when they were made, that is, in context, we conclude the comments provide no reason to suspect any prohibited considerations infected the district court's sentencing decision.

## III.  CONCLUSION

Kouangvan's sentence is affirmed.

_____