United States Court of Appeals

For the Eighth Circuit

_____

No. 16-3163

_____

United States of America

*Plaintiff - Appellee*

v.

Mark Allen Sullivan

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of South Dakota - Aberdeen

_____

Submitted: December 16, 2016
Filed: April 5, 2017
[Published]

_____

Before KELLY and MURPHY, Circuit Judges, and MAGNUSON,[1] District Judge.

_____

PER CURIAM.

Mark Sullivan pleaded guilty to one count of wire fraud, in violation of 18 U.S.C. § 1343, and was sentenced to a term of imprisonment of 41 months. Sullivan

_____

[1]The Honorable Paul A. Magnuson, United States District Judge for the District of Minnesota, sitting by designation.

was ordered to pay restitution in the amount of $56,464 to Lowell Lundstrom, Jr., of South Dakota, and in the amount of $48,000 to Paul Rohde, of Kansas. Sullivan appeals his sentence and the Lundstrom restitution order. Because we conclude the district court committed procedural error when it departed upward from the advisory sentencing guidelines, we remand for resentencing. Because we conclude Sullivan's appeal waiver is enforceable as to the restitution order, we dismiss the appeal of the restitution order.

## I. Background

Sullivan sold farm equipment on the internet, buying used tractors and other farm equipment and reselling them. In 2010, Lundstrom sent Sullivan two wire transfers totaling $51,600 for the purchase of a tractor and loader. Lundstrom received the loader but Sullivan provided a different tractor from the one he promised, which broke down and had to be repaired. Lundstrom obtained a default judgment against Sullivan in South Dakota state court in the amount of $56,464.44, reflecting the payments he sent Sullivan and reimbursement for other costs associated with repairing the tractor received.

In September 2015, Sullivan was charged by superseding indictment with two counts of wire fraud based on the two wire transfers Lundstrom had sent Sullivan. He pleaded guilty pursuant to a written plea agreement to one of the counts, and the parties agreed to recommend a sentence of time served. Sullivan also agreed to pay restitution to Lundstrom in an amount to be determined by the court and restitution to Rohde in the amount of $48,000 for a separate transaction. Sullivan further agreed to waive his right to appeal any non-jurisdictional issues except for "any decision by the Court to depart upward pursuant to the sentencing guidelines as well as the length of his sentence for a determination of its substantive reasonableness should the Court impose an upward departure or an upward variance pursuant to 18 U.S.C. § 3553(a)."

A presentence investigation report (PSR) was prepared. The PSR calculated Sullivan's total offense level as 13[2] and his criminal history category as II, yielding an advisory sentencing guideline range of 15 to 21 months.[3] The court notified the parties prior to sentencing that it was considering a substantial upward departure from the recommended sentencing Guidelines range based on underrepresentation of criminal history. At the sentencing hearing, the court heard testimony from the government's case agent, FBI Special Agent (SA) Matt Miller, and Sullivan's cousin, Roger Sullivan, who delivered farm equipment for Sullivan. Lundstrom also made a statement to the court. As anticipated in the plea agreement, the government and Sullivan both recommended a sentence of time served—about 17 months.[4]

Describing the offense as a "Ponzi scheme," the district court found that Sullivan had "escaped any punishment to amount to anything in . . . various state courts." After noting the advisory Guidelines range, the district court found "that a criminal history category of II substantially underrepresents the actual criminal history of the defendant, as well as a likelihood that he will commit further acts of fraud. He has committed the same fraud several times." The court determined that Sullivan's criminal history category should be VI instead of II, stating that "the proper criminal history category for the defendant is a VI. Not a II, not a III, and not

---

[2]The total offense level was calculated under USSG § 2B1.1 as follows: a base offense level of 7 pursuant to § 2B1.1(a)(1), a 6-level increase because the loss exceeded $30,000 but was less than $70,000, id. § 2B1.1(b)(1)(D), a 2-level increase because the offense was committed through mass-marketing, id. § 2B1.1(b)(2)(A)(ii), and a 2-level reduction for acceptance of responsibility, id. § 3E1.1(a).

[3]The PSR assessed Sullivan 3 criminal history points based on a 2008 misdemeanor conviction in Illinois for theft, a 2013 misdemeanor conviction in Missouri for stealing by deceit, and a 2014 misdemeanor conviction in Iowa for theft. The 2013 and 2014 convictions involved tractor-related transactions. No other convictions were noted.

[4]Sullivan was arrested on February 13, 2015, and detained pending trial.

a IV, and not a V. A VI." Applying criminal history category VI, the court determined Sullivan's new advisory range was 33 to 41 months and sentenced Sullivan to 41 months' imprisonment, and three years of supervised release, and ordered him to pay restitution of $56,464.44 to Lundstrom and $48,000 to Rohde, and a $100 special assessment.

## II. Discussion

Sullivan challenges his sentence as both procedurally and substantively unreasonable. He also argues the district court's restitution award to Lundstrom was not supported by the evidence.

### A. Sentence

We review the reasonableness of sentences in two parts: first, for significant procedural error, and second, if there is no significant procedural error, for substantive reasonableness. United States v. Barker, 556 F.3d 682, 689 (8th Cir. 2009). "Procedural error includes . . . failing to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range." United States v. Scales, 735 F.3d 1048, 1051–52 (8th Cir. 2013) (quoting United States v. Feemster, 572 F.3d 455, 461 (8th Cir. 2009) (en banc)). "In reviewing a sentence for procedural error, we review the district court's factual findings for clear error and its application of the guidelines de novo." Barker, 556 F.3d at 689.

Pursuant to USSG § 4A1.3, a court may impose an upward departure if "reliable information indicates that the defendant's criminal history category substantially under-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes." United States v. Mees, 640 F.3d 849, 854 (8th Cir. 2011) (quoting USSG § 4A1.3(a)(1)). The type of information that may be considered in departing upward under § 4A1.3 includes, inter

-4-

alia, "[p]rior sentence(s) not used in computing the criminal history category," such as "sentences for foreign or tribal offenses." USSG § 4A1.3(a)(2)(A). A sentencing court may also rely upon prior convictions that were too old to be counted and "[p]rior similar adult criminal conduct not resulting in a criminal conviction." United States v. Azure, 536 F.3d 922, 931 (8th Cir. 2008) (alteration in original) (quoting USSG § 4A1.3(a)(2)(E)).

"When contemplating and structuring such a departure, the district court should consider both the nature and extent of a defendant's criminal history." United States v. Hacker, 450 F.3d 808, 812 (8th Cir. 2006). In determining the extent of the departure, "the court *shall* . . . us[e], as a reference, the criminal history category applicable to defendants whose criminal history or likelihood to recidivate most closely resembles that of the defendant's." USSG § 4A1.3(a)(4)(A) (emphasis added). We have instructed district courts that "[t]o impose an upward departure under § 4A1.3, the sentencing court first must proceed along the criminal history axis of the sentencing matrix, comparing the defendant's criminal history with the criminal histories of other offenders in each higher category." Mees, 640 F.3d at 854 (quoting Azure, 536 F.3d at 931). While we do not require a "ritualistic exercise in which the sentencing court mechanically discusses each criminal history category it rejects en route to the category that it selects," the sentencing court "must adequately explain why it concludes the intermediary categories fail to meet the purposes of § 4A1.3." Azure, 536 F.3d at 931 (internal quotation marks, alteration, and quotation omitted). This is especially important when a departure is substantial. Id. at 932.

Here, the PSR assessed Sullivan three criminal history points, based on three prior misdemeanor convictions, resulting in a criminal history category II. The PSR listed no other criminal convictions. The PSR also documented a related charge in Kansas, as well as five other arrests on various charges. The disposition of three of these cases was unknown, and the other two had been dismissed. The PSR indicated there was "no information available warranting a departure from the advisory

guideline range." At the sentencing hearing, the district court adopted the PSR in its entirety.

In addition to the PSR, the court considered the testimony from SA Miller regarding information he had received about nine prior transactions involving Sullivan failing to deliver tractors or delivering tractors that were not what the purchasers thought they purchased. Four of the transactions SA Miller testified about were also discussed in the PSR—two of the transactions accounted for two of Sullivan's criminal history points and one was the pending charge in Kansas. SA Miller also provided additional information about one of the arrests listed in the PSR. SA Miller conceded that he relied on reports from the purchasers or law enforcement reports he had reviewed. The court credited the PSR and SA Miller's testimony as showing Sullivan was a "con man" who was engaged in a "Ponzi scheme."

After noting the Guidelines range recommended by the PSR and the sentencing recommendations of the parties, the court sua sponte departed upward from criminal history category II to category VI, based on what it perceived as Sullivan's lenient treatment in various state courts and that Sullivan had "committed the same fraud several times." But in departing upward, the court did not explain why criminal history category VI, as opposed to any other category in between, more accurately represented the seriousness of Sullivan's criminal history. See Azure, 536 F.3d at 931. The court relied on sentences that were included in the PSR's calculation of Sullivan's criminal history category of II, concluding the sentences were too lenient, but it did not explain what the appropriate sentence should have been or how many criminal history points should have been assigned.[5] And in relying on conduct that did not result in convictions, the court likewise did not determine the number of

---

[5]We note that simply relying on these convictions themselves would not be appropriate as USSG § 4A1.3 allows the court to rely on "[p]rior sentence(s) *not* used in computing the criminal history category." USSG § 4A1.3(a)(2)(A) (emphasis added).

criminal history points that conduct might have received had there been a conviction. See id. at 932.  Finally, the court failed to explain how Sullivan's criminal history equated with the criminal history of other defendants assigned criminal history category VI.  Id.; see also § 4A1.3(a)(4)(A).

The court departed from the second lowest criminal history category to the highest and then sentenced Sullivan to the top of the new Guidelines range—a sentence almost two and a half times higher than the sentence both parties recommended.  The analysis the district court provided in this case does not adequately explain and support such a significant departure.  As in Azure, we conclude the district court's failure to sufficiently explain its upward departure is a significant procedural error requiring remand.  536 F.3d at 932.[6]

## B.  Restitution

Sullivan also challenges the court's order that he pay $56,464.44 in restitution to Lundstrom, arguing that the restitution awarded exceeds the actual loss proved by the government, in violation of the Mandatory Victims Restitution Act, 18 U.S.C. § 3663A.  The government urges us to dismiss Sullivan's appeal of his restitution order based on the appeal waiver contained in his plea agreement.  In reviewing a waiver of the right to appeal, we "must confirm that the appeal falls within the scope of the waiver and that both the waiver and plea agreement were entered into knowingly and voluntarily."  United States v. Andis, 333 F.3d 886, 889–90 (8th Cir. 2003) (en banc).  "Even when these conditions are met," we must decline to "enforce a waiver where to do so would result in a miscarriage of justice."  Id. at 890.

---

[6]Because we conclude the sentence imposed was procedurally unreasonable, we do not need to consider the substantive reasonableness of the sentence.  See Azure, 936 F.3d at 934.

We conclude that the restitution order falls within the scope of the appeal waiver. The plea agreement signed by Sullivan and the government provides the following stipulation:

> The Defendant hereby waives all defenses and his right to appeal any non-jurisdictional issues. The parties agree that excluded from this waiver is the Defendant's right to appeal any decision by the Court to depart upward pursuant to the sentencing guidelines as well as the length of his sentence for a determination of its substantive reasonableness should the Court impose an upward departure or an upward variance pursuant to 18 U.S.C. § 3553(a).

Under our precedent, a waiver that extends to "any non-jurisdictional issues" includes restitution within its scope. United States v. Lee, 502 F.3d 780, 780–81 (8th Cir. 2007); United States v. Schulte, 436 F.3d 849, 850 (8th Cir. 2006); United States v. Greger, 98 F.3d 1080, 1081–82 (8th Cir. 1996).

We conclude that Sullivan knowingly and voluntarily waived his right to appeal the restitution order. During the plea colloquy, the court reviewed the plea agreement with Sullivan, including his agreement to pay restitution to Lundstrom and Rohde. The court noted that, except for his right to appeal "an upward departure or upward variance," Sullivan had "given up all right to appeal." Sullivan agreed he understood. Sullivan contends that the permissible appeal of the upward departure allows him to appeal any other aspect of the sentence as well. Sullivan's interpretation of his appeal waiver would render its limitation—the ability to appeal the imposition of an upward departure or variance and to challenge the length of the resulting sentence for substantive reasonableness—meaningless, and we decline to adopt it.

We further conclude that enforcement of the appeal waiver in this case will not result in a miscarriage of justice because "a challenge to a restitution order based on

sufficiency of the evidence does not implicate the sort of 'illegality' that we have said in <u>Andis</u> might justify voiding a voluntary agreement between the parties." <u>Schulte</u>, 436 F.3d at 851.

### III. Conclusion

For the reasons set forth above, we vacate Sullivan's sentence and remand for resentencing on the existing record consistent with this opinion, and we dismiss that portion of the appeal seeking review of the restitution order.

_____