# United States Court of Appeals
### For the Eighth Circuit

_____

No. 24-1041

_____

United States of America

*Plaintiff - Appellee*

v.

Kayline Joy LaBelle

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of South Dakota - Northern

_____

Submitted: December 16, 2024
Filed: April 14, 2025
[Unpublished]

_____

Before SMITH, GRUENDER, and STRAS, Circuit Judges.

_____

PER CURIAM.

Kayline Joy LaBelle pleaded guilty to one count of embezzlement and theft from an Indian tribal organization on an aiding and abetting theory. *See* 18 U.S.C. §§ 2 and 1163. The district court[1] sentenced LaBelle to the statutory maximum of

---

[1]The Honorable Charles B. Kornmann, United States District Judge for the District of South Dakota.

60 months. The court reached its sentence by applying an aggravating role enhancement under U.S.S.G. § 3B1.1. The court also departed above the United States Sentencing Guidelines range in light of her underrepresented criminal history. On appeal, LaBelle contends that the district court procedurally erred in applying § 3B1.1 and in departing upward. Moreover, she argues that her 60-month sentence was substantively unreasonable. We affirm.

I. *Background*[2]

LaBelle served as the elected treasurer for the Buffalo Lake District of the Sisseton-Wahpeton Oyate Sioux Reservation (District). During her tenure as treasurer, LaBelle wrote and cashed 492 checks for amounts exceeding her authorized stipends, ultimately embezzling over $203,000 from the District. Near the end of her tenure in 2022, LaBelle wrote multiple unauthorized checks to several of her siblings and at least one friend. In total, of the $203,283 embezzled, $182,946 went directly to LaBelle. In 2022, the District suspended the banking account based on LaBelle's suspicious financial activities. After the account was closed and LaBelle had resigned, LaBelle continued to write more checks and several of LaBelle's siblings attempted to cash several checks associated with that closed account.

A federal grand jury indicted LaBelle with five counts of embezzlement and theft from an Indian tribal organization, one on an aiding and abetting theory. *See* 18 U.S.C. §§ 2 and 1163. Pursuant to a plea agreement, LaBelle pleaded guilty to one count of embezzlement and theft from an Indian tribal organization for the conduct that took place between January 2018 and December 2022. In her plea agreement, LaBelle waived her right to appeal her sentence. The plea waiver, however, permitted the appeal of "any decision by the Court to depart upward pursuant to the sentencing [G]uidelines as well as the length of her sentence for a determination of its substantive reasonableness should the Court impose an upward departure or an upward variance pursuant to 18 U.S.C. § 3553(a)." R. Doc. 46, at 7.

---

[2] LaBelle's motion to supplement is denied.

The final presentence report (PSR) assigned a base offense level of 6 under U.S.S.G. § 2Bl.l. The base offense level was enhanced by 10 levels for a loss greater than $150,000 but less than $250,000 under U.S.S.G. § 2Bl.l and was enhanced by 2 levels for abuse of a position of trust under U.S.S.G. § 3Bl.3. At sentencing, the government objected to the PSR's failure to include a 4-level enhancement for being an organizer or leader under U.S.S.G. § 3Bl.l(a). Defense counsel opposed the government's objection and disputed the applicability of the role enhancement. After receiving the 3-level reduction for acceptance of responsibility, LaBelle's total offense level was 19. LaBelle had no criminal history points. The PSR thus calculated her Guidelines range to be 30–37 months.

The PSR did not include a recommendation to depart from the advisory Guidelines range. The district court, however, filed a memorandum prior to the sentencing hearing notifying the parties that it intended to consider an upward departure or upward variance to compensate for LaBelle's underrepresented criminal history.

At sentencing, the district court heard arguments from both sides regarding application of the leader or organizer role enhancement. Ultimately, the district court reasoned that "[t]he co-defendants in this case would not have received one dime but for the actions of . . . LaBelle." R. Doc. 139, at 23. In other words, "[s]he had the checks. She had the checkbook." *Id.* at 24. Therefore, "[s]he facilitated criminal actions by her siblings and her friend." *Id.* The district court overruled the defense counsel's objection and applied the enhancement.

During the government's sentencing statement, the district court inquired about the five-year statute of limitation and whether there was "culpable conduct that existed before 2018" that the government was aware of. *Id.* at 6. The government responded that it did not know and it was only aware of the "significant conduct for the time frame charged." *Id.* Defense counsel stated that the criminal conduct started back in 2018. The district court, once again, mentioned the five-year statute of limitations. Defense counsel replied that discovery had not revealed any improper

conduct before 2018. The district court acknowledged that the relevant conduct started in January 2018. During its consideration of defense counsel's request for a downward variance, the district court stated:

> COURT: She was the treasurer from—prior to 2018. As I stated previously, the Government cannot do anything about what happened before 2018. I don't know what happened. And the Government doesn't either because the statute of limitations wouldn't run on that for five years, they can't go back that long. So whatever she was doing before that date, we have no idea. One would suspect that she was doing the same thing beforehand that she did year in and year out, day in and day out, month in and month out starting in January 2018.
>
> So this offense conduct spanned over five years of continuous embezzlements, involved at least 492 checks when she was only entitled to 69 monthly stipend checks and one home repair check.

*Id.* at 25–26.

The district court elaborated on LaBelle's offense conduct and its seriousness. It reasoned that LaBelle had "committed hundreds of crimes in her capacity as treasurer" because in embezzlement cases "every time you write a check, it's a crime." *Id.* at 24–25. Therefore, the district court found that her "criminal history category of I substantially underrepresent[ed] her actual criminal history." *Id.* at 28. Additionally, it noted how LaBelle's statement that "she wasn't a criminal" during her allocution ultimately brought "into question . . . whether she ha[d] accepted responsibility" and demonstrated her "in-your-face attitude." *Id.* Moreover, the district court noted that LaBelle had "not paid one dime of restitution" and the court doubted her intention to do so in the future. *Id.* at 25. In consideration of LaBelle's mitigation evidence, the district court acknowledged her "terrible marriage" but found that it did not "amount to anything" because her husband was "deceased and she's receiving his money every month." *Id.* at 25. Moreover, "[b]eing in an abusive relationship does not justify crimes of this nature." *Id.* at 29.

The district court acknowledged that it must consider "not only the sentencing [G]uidelines" but also "all the statutory factors set forth in 18 [U.S.C.] §3553." *Id.* Accordingly, the district court stated that "whether it's under the [G]uidelines or as a variance . . . I'm going to go above her [G]uideline[s] range." *Id.* Accordingly, the district court denied LaBelle's motion for a downward variance and sentenced her to the statutory maximum of 60 months with a 3-year term of supervised release.

## II. *Discussion*

On appeal, LaBelle argues that the district court procedurally erred by applying the organizer/leader enhancement under U.S.S.G. § 3B1.1(a) and failing to adequately explain the reasons for its upward departure/variance from the Guidelines. Additionally, she argues that her sentence was substantively unreasonable. We affirm.

### A. *Procedural Error*

"When we review the imposition of sentences, whether inside or outside the Guidelines range, we apply a deferential abuse-of-discretion standard." *United States v. Kistler*, 70 F.4th 450, 452 (8th Cir. 2023) (quoting *United States v. Feemster*, 572 F.3d 455, 461 (8th Cir. 2009) (en banc)). "We review a district court's sentence in two steps: first, we review for significant procedural error; and second, if there is no significant procedural error, we review for substantive reasonableness." *Id.* (quoting *United States v. O'Connor*, 567 F.3d 395, 397 (8th Cir. 2009)).

> Procedural errors include "failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the [18 U.S.C.] § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range."

*United States v. Godfrey*, 863 F.3d 1088, 1094–95 (8th Cir. 2017) (quoting *Feemster*, 572 F.3d at 461).

LaBelle contends that the district court erroneously imposed the leadership enhancement without sufficient evidence in the record to support it and did not adequately explain its reasoning for the upward departure from the Guidelines range.

### 1. *Sentence Enhancement under U.S.S.G. § 3B1.1(a)*

LaBelle argues that the district court improperly applied an enhancement under § 3B1.1(a). However, we need not reach the question of whether the district court abused its discretion in applying the enhancement because LaBelle has waived the right to challenge this decision on appeal.

"As a general rule, a defendant is allowed to waive appellate rights." *United States v. Guice*, 925 F.3d 990, 992 (8th. Cir. 2019) (quoting *United States v. Andis*, 333 F.3d 886, 889 (8th Cir. 2003) (en banc)). "When reviewing a purported waiver, we must confirm that the appeal falls within the scope of the waiver and that both the waiver and plea agreement were entered into knowingly and voluntarily." *Andis*, 333 F.3d at 889–90. "Even when these conditions are met, however, we will not enforce a waiver whe[n] to do so would result in a miscarriage of justice." *Id.* at 890.

The plain language of LaBelle's plea agreement waived her "right to appeal any non-jurisdictional issues." R. Doc. 46, at 7. LaBelle's appeal of the district court's application of the enhancement under § 3B1.1(a) is within the scope of this waiver. LaBelle's waiver was knowing and voluntary. LaBelle does not dispute the voluntariness of her plea on appeal and nothing in the record would lead us to conclude otherwise. LaBelle's appeal rights were clearly set forth in her plea agreement, and the district court explained the scope of those appeal rights at sentencing. On this record, we are satisfied that LaBelle's waiver was knowing and voluntary.

Finally, we conclude that enforcing this waiver would not result in a miscarriage of justice. On appeal, LaBelle argues that the district court's application of the enhancement was not supported by the record. Nevertheless, "misapplication of the Guidelines does not render the enforcement of an appeal waiver a miscarriage

of justice." *Guice*, 925 F.3d at 993. LaBelle has waived her right to challenge the sentence enhancement under § 3B1.1(a).

### 2. *Upward Departure*

LaBelle also argues that the district court procedurally erred when it imposed an upward departure based on LaBelle's underrepresented criminal history. LaBelle's appeal waiver expressly excluded this issue from the waiver's scope.

LaBelle avers that the district court erred departing upward from the Guidelines range because (1) the court did not possess reliable information indicating that LaBelle's criminal history was substantially underrepresented and (2) the district court did not explain why the intermediary criminal history categories insufficiently represented LaBelle's conduct. "[W]e review departures from the Guideline[s] range under an abuse of discretion standard." *United States v. Bordeaux*, 108 F.4th 702, 704 (8th Cir. 2024).

First, we consider LaBelle's argument that the district court's upward departure was in error. LaBelle contends that the court considered conduct already reflected in her base offense level and improperly speculated that other embezzlements occurred outside the statute of limitations.

An upward departure is warranted under the Guidelines if "reliable information indicates that the defendant's criminal history category substantially under-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes." U.S.S.G. § 4A1.3(a)(1). In *United States v. Mees*, we held that the sentencing court did not plainly err in finding the defendant's criminal history to be substantially underrepresented when he was charged with one count of theft for $20,000 of federal funds. 640 F.3d 849, 855 (8th Cir. 2011). His PSR, however, detailed a five-year embezzlement scheme totaling over $1.4 million. *Id.* at 854. The sentencing court reasoned that each time the defendant stole money "should be construed as a separate criminal act." *Id.* at 853. Consequently, his "one charge for theft . . . did not encompass all of [the defendant's]

criminal conduct that occurred during the five-year embezzlement scheme." *Id.* at 854.

Similarly, LaBelle's criminal conduct over the nearly five-year period was not completely encompassed in the one-count of embezzlement and theft from an Indian tribal organization. Here, as in *Mees*, the district court reasoned that each check written by LaBelle over the relevant period was a separate crime, and therefore, LaBelle had "committed hundreds of crimes in her capacity as treasurer." R. Doc. 139, at 24–25. The PSR detailed the total amount of funds embezzled by LaBelle over the nearly five-year period within the statute of limitations, including 492 checks. LaBelle did not dispute these facts as outlined in the PSR.

Moreover, the district court did not abuse its discretion by considering this conduct to both increase LaBelle's offense level and to upwardly depart to a criminal history category of IV. Under our precedent, the "conduct that has been used to establish the offense level" may also be used to "assess the need for an upward departure." *Mees*, 640 F.2d at 855 (quoting *United States v. Thornberg*, 326 F.3d 1023, 1027 (8th Cir. 2003)). Therefore, the district court possessed reliable information in the PSR that indicated LaBelle's criminal history category substantially underrepresented the seriousness of her criminal history, and the court was entitled to consider that conduct in departing upward.

LaBelle also argues that the court improperly relied upon speculation concerning possible embezzlement occurring outside the statute of limitations. LaBelle points to the court's references to the five-year statute of limitations and its statement that "[o]ne would suspect that she was doing the same thing beforehand that she did year in and year out . . . starting in January of 2018." R. Doc. 139, at 26. LaBelle contends that the PSR did not contain any reliable information as to embezzlement prior to 2018, and therefore, the court procedurally erred by relying on clearly erroneous facts.

We are not convinced that the district court improperly relied upon LaBelle's possible conduct prior to 2018. Although the district court did question the parties as to their knowledge of any criminal conduct occurring outside the statute of limitations, it ultimately acknowledged the actual period of conduct within the statute and that it "[did not] know what happened" outside that period. *Id*. at 25. The district court did not make a finding that this conduct had occurred or express a belief that the conduct had occurred. *Cf. United States v. Stokes*, 750 F.3d 767, 772 (8th Cir. 2014) (holding that the district court's reliance on its finding that the defendant was "probably" selling drugs during his period of employment was a clearly erroneous factual finding when the PSR did not contain any evidence of drug dealing and defendant was only convicted of drug possession).

LaBelle also argues that the district court procedurally erred by sentencing her to the equivalent of criminal history category IV. She contends that it did not explain the insufficiency of the intermediary criminal history categories.

"To impose an upward departure under § 4A1.3, the sentencing court must first proceed along the criminal history axis of the sentencing matrix, comparing the defendant's criminal history with the criminal histories of other offenders in each higher category." *United States v. Azure*, 536 F.3d 922, 931 (8th Cir. 2008) (quoting *United States v. Collins,* 104 F.3d 143, 145 (8th Cir. 1997)). However, "[t]his process does not 'require a ritualistic exercise in which the sentencing court mechanically discusses each criminal history category it rejects en route to the category that it selects.'" *Id.* (quoting *United States v. Day*, 998 F.2d 622, 625 (8th Cir. 1993)). Nevertheless, "the court must adequately explain why it concludes the intermediary categories fail to meet the purposes of § 4A1.3." *Id.* (cleaned up).

Here, the district court adequately explained its reasoning for departing upward. The court based its sentence on LaBelle's nearly five-year scheme of repetitive, uninterrupted embezzlement of District funds that were not adequately reflected in LaBelle's criminal history category I. Viewing each instance of embezzlement as a separate crime, the district court reasoned that LaBelle had

"committed hundreds of crimes" that were not represented in her criminal history and for which she faced no individual charges. R. Doc. 139, at 24. Here, the district court adequately explained its upward departure noting the number of checks written and the duration of the conduct. *See Mees*, 640 F.3d at 855 (finding no error when district court jumped from criminal history category I to IV "[a]lthough the district court did not specifically mention that it had considered the criminal histories of other offenders in each intermediate criminal history category"); *see also Collins*, 104 F.3d at 145 (affirming district court's upward departure from criminal history I to IV when the PSR detailed 16 other crimes that had not been charged even though the court did not specifically mention that it had considered each intermediate category).

Moreover, "[w]e have held that any procedural error in granting an upward departure is harmless when the district court makes it clear that the sentence is also based on an upward variance under the [§] 3553(a) factors." *Kistler*, 70 F.4th at 452 (alteration in original) (quoting *United States v. Timberlake*, 679 F.3d 1008, 1011 (8th Cir. 2012)).

Here, the district court noted that "whether it's under the [G]uidelines or as a variance . . . I'm going to go above her [G]uideline[s] range." R. Doc. 139, at 29. After issuing the sentence, the district court responded to a query whether the sentence was a variance or an upward departure. The district court replied, "It's both." *Id.* at 30. When discussing the § 3553(a) factors, the district court placed significant weight on the seriousness of the offense, LaBelle's failure to accept responsibility, the likelihood of deterring future misconduct, and the fact that LaBelle's criminal history score did not adequately represent the multitude of embezzlement crimes she had conducted over the nearly five-year period. The district court's independent rationale for its upward variance renders any procedural error in the upward departure harmless.

B. *Substantive Reasonableness*

Finally, LaBelle challenges the substantive reasonableness of her sentence. LaBelle contends that the district court gave improper weight to the number of checks written by LaBelle and did not consider LaBelle's mitigating circumstances.

"The sentencing court abuses its discretion if it fails to consider a relevant factor that should have received significant weight, gives significant weight to an improper or irrelevant factor, or commits a clear error of judgment in weighing the appropriate factors." *United States v. Luscombe*, 950 F.3d 1021, 1031 (8th Cir. 2020). When a district court imposes a sentence outside the Guidelines range, we give "due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance." *Id.* (internal quotations omitted).

Here, the district court imposed a sentence 23 months above the top of the Guidelines range. The district court adequately justified the upward departure/variance in light of the § 3553(a) factors. In particular, the district court focused on the nature and circumstance of the offense, including the large amount of money embezzled via hundreds of unauthorized checks. The district court considered LaBelle's history and the need to promote respect for the law. It did so when it addressed LaBelle's underrepresented criminal history, as well as her failure to pay a significant restitution amount up to that point. The district court did consider LaBelle's mitigating evidence related to past abuse and her promise to pay back the embezzled funds but accorded it little to no weight. The district court found that the aggravating factors outweighed the mitigating evidence and imposed the statutory maximum sentence. Viewing the full record, we conclude that the sentence was not substantively unreasonable.

III. *Conclusion*

Accordingly, we affirm the judgment of the district court.

_____